# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| DWAYNE E. HOLLAND,<br>        *Plaintiff,*<br>    v.<br>FLOWSERVE US, INC.,<br>        *Defendant.* | CASE NO. 6:12-cv-00020<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Plaintiff Dwayne E. Holland ("Plaintiff") filed this employment discrimination action against Defendant Flowserve US, Inc. ("Flowserve") alleging that Flowserve unlawfully discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Flowserve has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, I will grant Flowserve's motion.

### I. BACKGROUND

  Plaintiff, who has worked continuously for Flowserve or its predecessors since 2000, currently holds an LG7 Technician Assembly position at the company's facility in Lynchburg, Virginia. In that capacity, Plaintiff installs, assembles, and services valve systems. Prior to his employment with Flowserve, Plaintiff worked as an electrician for four different companies.[1] Since joining Flowserve, Plaintiff has taken advantage of the company's educational assistance

---

[1] Plaintiff's résumé indicates that he worked for four years as a maintenance technician for Support Systems International, where he serviced and maintained therapy units in hospitals in New York. *See* Def.'s Mot. Summ. J. Ex. E. Plaintiff spent three years as an electrician helper at Johnson Electric, where he assisted electricians with installing conduit piping, running wires to switches, and reciprocal outlet boxes. *Id.* He then spent two years at Burlington Industries working in electrical maintenance to maintain and service computers and other office equipment. *Id.* Finally, he worked as an electrician for Lowdermilk Electric Inc., where his duties included wiring electrical devices and appliances on commercial and residential construction sites. *Id.*

program to go back to school and earn multiple degrees.[2]  Between 2006 and 2011, Plaintiff applied for eleven job positions with Flowserve, all of which would have been promotions from his current position.[3]  Plaintiff alleged in his complaint that every position he applied for was ultimately given to a white male and that he was passed over because of his race.

The Equal Employment Opportunity Commission's ("EEOC") records indicate that Plaintiff first contacted the EEOC's Richmond office to file a charge of discrimination on April 1, 2011.  On April 21, 2011, Plaintiff signed an EEOC "Charge of Discrimination" form that summarized Plaintiff's allegations, and the EEOC transmitted the charge to the Virginia Council On Human Rights at Plaintiff's request.  The EEOC issued a right to sue letter on February 29, 2012, and Plaintiff filed a complaint in this Court on May 4, 2012, seeking to recover $2,000,000 in damages and requesting that he receive a management position at Flowserve.

## II. LEGAL STANDARD

Summary judgment under Rule 56 should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted."  *Id.* at 249–50.

---

[2] Plaintiff earned an A.A.S. in Electronics Technology from Central Virginia Community College in 2007, a B.S. in Applied Management from Franklin University in 2009, and an MBA from Franklin University in 2011.
[3] Flowserve's counsel asked Plaintiff at his deposition about a twelfth position, a supervisor sales support position, but Plaintiff stated he did not remember applying for it.  Since the record contains no other evidence that Plaintiff applied for the position, I need not address it here.

2

In considering a motion for summary judgment, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The party seeking summary judgment bears the burden of showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325. If the moving party sufficiently supports its motion for summary judgment, the burden shifts to the non-moving party to set forth specific facts illustrating genuine issues for trial. *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008) (citation omitted). On those issues for which the non-moving party has the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in the rule. Fed. R. Civ. P. 56(c); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993); s*ee also Cheatle v. United States*, 589 F. Supp. 2d 694, 698 (W.D. Va. 2008) ("Indeed, the non-moving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation.") (citation omitted).

The court's role is to determine whether there is a genuine issue based upon the facts, and "not . . . weigh the evidence and determine the truth of the matter." *Anderson,* 477 U.S. at 249. Ultimately, the trial court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

### III. DISCUSSION

Plaintiff alleges that Flowserve discriminated against him by failing to promote him to any of the numerous supervisory or management positions for which he applied. Title VII makes it unlawful for an employer to discriminate against an employee on the basis of race. 42 U.S.C. § 2000e–2(a)(1). An employee may defeat a motion for summary judgment and establish a

successful Title VII claim through either: (1) the mixed-motive framework, under which "it is sufficient for the employee to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons;" or (2) the *McDonnell Douglas* pretext framework, "under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination."[4] *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir. 2004); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05 (1973). "Regardless of the type of evidence offered by a plaintiff as support for [his or her] claim (direct, circumstantial, or evidence of pretext) . . . '[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Hill*, 354 F.3d at 286 (quoting *Reeves*, 530 U.S. at 153).

In his complaint, Plaintiff alleges that he was passed over for promotions eight times since 2000, although he provides details in the complaint itself about only one position, a project manager position he applied for in 2011. During discovery, the parties identified eleven positions that Plaintiff contends he applied for but did not receive because of discrimination. Since the complaint does not identify precisely which positions Plaintiff alleges gave rise to discrimination, I will address the arguments presented by the parties regarding all eleven positions. As I will discuss in more detail below, I find that Plaintiff's claims as to four of the positions are barred by the time limits imposed by 42 U.S.C. § 2000e-(5)(e)(1). With respect to the remaining seven positions, I find that Plaintiff has failed to make out a prima facie case of race discrimination.

---

[4] Because Plaintiff has not offered evidence that Flowserve was motivated to take adverse employment actions against him at least in part for forbidden reasons, I will address Plaintiff's claims only under the *McDonnell Douglas* burden shifting framework

4

## A. Title VII Time Limits

Section 2000e-(5)(e)(1) of Title 42 provides that a charge of discrimination must be filed within 180 days after an alleged unlawful employment practice occurred, or within 300 days after the practice occurred if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief." A failure to promote is a discrete act of discrimination, and the statute of limitations clock starts to run on the date the actual promotion decision is made. *See Williams v. Giant Food, Inc.*, 370 F.3d 423, 428–29 (4th Cir. 2004). In this case, since Plaintiff filed a charge of discrimination with both the EEOC and the Virginia Council On Human Rights, the 300-day time limit applies. Given that Plaintiff first contacted the EEOC on April 1, 2011, any acts of discrimination that took place before June 5, 2010, are time-barred. Thus, Plaintiff cannot bring a Title VII claim concerning Flowserve's decision not to promote him to the Field Service Technician, Engineer Staff, or the two Service Coordinator positions for which he applied because those positions were all filled prior to 2010.

## B. The Prima Facie Case

Under the *McDonnell Douglas* framework, to establish a prima facie case of discriminatory refusal to promote, a plaintiff must show that: (1) he is a member of a protected class; (2) there was a specific position for which he applied; (3) he was qualified for that position; and (4) he was rejected for that position under circumstances that give rise to an inference of unlawful discrimination. *Williams*, 370 F.3d at 430; *Carter v. Bell*, 33 F.3d 450, 458 (4th Cir. 1994). If a plaintiff can make this showing, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Hill*, 354 F.3d at 285. If the employer can do so, the burden shifts back to the plaintiff to show by a

preponderance of the evidence that the employer's stated reasons are a pretext for unlawful discrimination. *Id.*

The record clearly shows that Plaintiff cannot establish a prima facie case for two of the remaining seven positions for which he applied. Plaintiff cannot show that he was rejected from either the Operations Manager position or the Contract Administrator positions. He admitted in his deposition that he withdrew his application for the Operations Manager position before being accepted or rejected. Pl.'s Dep. 64:15–65:16, Jan. 9, 2013. He also admitted that he was actually offered the Contract Administrator position, but he declined it. Pl.'s Dep. 100:20–102:5. Therefore, Plaintiff cannot show that he suffered unlawful discrimination with respect to either of these two positions.

Plaintiff did apply for and was rejected from five other positions: Production Supervisor; Project Manager; Manufacturing Manager; Senior Buyer; and Safety, Health & Environment Coordinator. Flowserve contends that Plaintiff was not qualified for any of these positions and therefore cannot satisfy the third element of the prima facie case. Flowserve bases this argument on the descriptions of required skills included in the job postings for each position, Plaintiff's deposition testimony, and the information provided in various résumés supplied by Plaintiff when he applied for the positions. Plaintiff claims that Flowserve intentionally altered or reworded the descriptions so that skills that are listed as "required" in the documents produced by Flowserve in discovery were originally listed as "preferred" or "a plus" at the time the job openings were advertised.[5]

---

[5] Flowserve argues that, because Plaintiff makes these factual claims in an unsworn response to Flowserve's motion for summary judgment, the Court should not consider them because they are not proper evidence under Rule 56(c). *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring that a party asserting a fact support its assertion by citing to documents such as depositions, affidavits, or declarations). Indeed, Plaintiff offers no other evidence that Flowserve altered the language in the job postings. However, I find that, even assuming Plaintiff's claims are true and that he had made them in the proper form, Flowserve would still be entitled to summary judgment.

Plaintiff does not dispute, however, that the qualifications that were allegedly altered were listed in some form on the original job postings, or that Flowserve preferred applicants who possessed these skills or qualifications. Moreover, the undisputed facts show that each of the candidates hired by Flowserve possessed relevant skills or qualifications that Plaintiff lacked; indeed, Plaintiff admitted as much in his deposition. Therefore, I conclude that Plaintiff cannot satisfy the fourth element of the prima facie case.[6] The evidence does not show that he was rejected from any position under circumstances that give rise to an inference of unlawful discrimination. Instead, for each position, Flowserve simply decided to hire a candidate that it deemed more qualified, based on skills or qualifications that were related to the duties and responsibilities of the position, and that Plaintiff does not dispute he lacked.[7] I will outline the undisputed facts supporting this conclusion for each position in turn.

### 1. Production Supervisor

The job posting for the Production Supervisor position specified that a "BS/MS degree in Mechanical/Industrial/Electrical Engineering or Industrial Technology" was required. Ex. DD.[8] The résumé Plaintiff submitted to apply for the position states that he received an A.A.S. in Electronics Technology, a B.S. in Applied Management, and an MBA. Ex. EE. Plaintiff

---

[6] Since I base my decision on Plaintiff's failure to make out the fourth element of the prima facie case, I need not and do not address arguments regarding whether he made out the third element. Rather than holding that Plaintiff was not qualified for any of the positions, I simply hold that the undisputed evidence shows that there were other candidates who were more qualified.

[7] While I have framed this analysis in terms of Plaintiff's failure to make out prima facie case, it is equally possible to cast it in terms of the second step of the *McDonnell Douglas* burden shifting framework. Even assuming Plaintiff has made out a prima facie case, Flowserve has put forth a legitimate, nondiscriminatory reason for its decision not to promote Plaintiff: namely, that the applicants it hired were more qualified. At that point, the burden shifts back to Plaintiff to show that Flowserve's proffered reason was a pretext for unlawful discrimination. Plaintiff has not presented any evidence that would support a finding of pretext. As discussed below, he admitted in his deposition that the applicants ultimately hired for each position were qualified for the positions and in fact possessed relevant qualifications that he himself did not. Thus, regardless of how the issue is framed, I find that Plaintiff has not presented facts sufficient to show that he can succeed on the ultimate issue: that he was the victim of unlawful race discrimination.

[8] For clarity's sake, I note that all numbered and lettered exhibits refer to the exhibits attached to Flowserve's Brief in Support of Defendant's Motion for Summary Judgment, Mar. 21, 2013, docket no. 25.

admitted in his deposition that his bachelor's degree is not an engineering degree and that he did not have a degree that met the specifications in the job posting. Pl.'s Dep. 95:4–96:1. By contrast, the applicant who was ultimately hired, Charles Rodes, held a B.S. degree in industrial and systems engineering. Ex. FF. The manager who made the hiring decision stated that he chose Rodes because he met the qualifications for the position and was clearly more qualified than Plaintiff. Ex. 10, Olsen Decl., at 2. The manager based this judgment on the degree requirement and on Plaintiff's answers in an interview. *Id.* The manager stated that, based on the interview, he "did not believe that [Plaintiff] had the ability to oversee assigned personnel to successfully complete production activities as required to meet delivery requirements and shipping goals." *Id.* Plaintiff himself stated in his deposition that he did not have any evidence that Rodes was not qualified for the position or that Rodes was less qualified than he was. Pl.'s Dep. 99:5–22.

## 2. Project Manager

The "General Summary" section of the Project Manager job posting states that a successful applicant will have "[r]esponsibility for quotation, order processing, and operations completion of complex and/or large contracts, including on-time shipment, cost containment, and quality." Ex. V. Asked at his deposition whether he had experience in performing these tasks at the time he applied for the position, Plaintiff stated that he could not remember. Pl.'s Dep. 68:8–71:18. Ray Hawkins, the Flowserve employee who made the hiring decision stated in an affidavit that he did not select Plaintiff for the position because Plaintiff lacked many of the skills required to perform the Project Manager's duties. Ex. 8, Hawkins Aff., at 2. Specifically, Hawkins stated that Plaintiff "did not have established technical ability in actuation and controls," nor did he have "any experience in preparing quotations, processing orders or serving

8

as a liaison to customers." *Id.* at 2–3. In addition, based on an interview and a review of Plaintiff's résumé, Hawkins stated that he did not believe Plaintiff "understood how the products actually functioned such that he had the necessary technical ability to have a discussion with a customer about how the product functioned or was used. *Id.* By contrast, Hawkins stated that the applicant whom he did select, Nathan Andrzejewski, did have all of the necessary qualifications, and was clearly more qualified than Plaintiff. *Id.* at 4–5. Hawkins said he "knew that Mr. Andrzejewski had the necessary technical ability in actuation and controls to talk with customers about how the product worked and was used because Mr. Andrzejewski had been performing this function in his Supervisor Sales Support position at Flowserve." *Id.* at 4. In that position, Andrzejewski had also been preparing quotations, processing orders, and serving as a liaison to customers. *Id.* Plaintiff admitted in his deposition that he did not have any evidence that Andrzejewski was not qualified or that Andrzejewski was less qualified than he was. Pl.'s Dep. 77:14–78:1.

### 3. Manufacturing Manager

The Manufacturing Manager posting lists the following requirements: five years experience in a manufacturing leadership position; materials management experience, including "lean" methodologies; and experience in managing machining and assembly processes. Ex. P. Plaintiff admitted in his deposition that he did not have any experience in a manufacturing leadership position.[9] By contrast, David Olsen, the applicant selected for the position, had over twenty years of such experience, as Plaintiff acknowledged in his deposition. Jim Erdly, who selected Olsen for the position, stated in an affidavit that he did so because Olsen met the

---

[9] Plaintiff did not mention in his deposition whether he had any experience in materials management or in managing machining and assembly processes. However, the manager who made the hiring decision for the position stated in an affidavit that Plaintiff did not have that type of management experience. Ex. 6, Erdly Aff., at 2. Plaintiff has submitted no evidence to show that he did have such experience.

qualifications for the position and was clearly more qualified than Plaintiff. Ex. 6, Erdly Aff., at 2–3. Specifically, Erdly stated that Olsen had "over fifteen years of experience in a manufacturing leadership position, experience concerning 'lean' methodologies, and experience managing machining and assembly processes." *Id.* at 2. Again, Plaintiff stated in his deposition that he did not have any evidence that Olsen was not qualified or that Olsen was less qualified than he was. Pl.'s Dep. 91:6–22.

### 4. Senior Buyer

The Senior Buyer posting states that candidates should have "[f]ive to ten years experience in negotiations, formulating contracts, locating new sources, and supporting manufacturing supply chain" and a "strong background in sourcing material in low cost regions." Ex. M. Plaintiff admitted in his deposition that he did not have experience in locating the sources of supply and providing support to a manufacturing supply chain and that he was not a certified purchasing manager. Pl.'s Dep. 81:8–16. By contrast, Steven Turner, the applicant selected for the position, had experience in the very areas that Plaintiff did not: Turner was a certified purchasing manager who had worked as a commodity buyer with two different companies. Ex. O. Richard Gilliam, the Flowserve employee who selected Turner, stated in an affidavit that he chose Turner because he was well-qualified, and that Turner was clearly more qualified than Plaintiff. Ex. 5, Gilliam Aff., at 2–3. Plaintiff admitted in his deposition that he did not have any evidence that Turner was not qualified or that Turner was less qualified than he was. Pl.'s Dep. 83:13–23.

### 5. Safety, Health & Environment

The Safety, Health & Environment posting stated that successful candidates would have, among other things, a bachelor's degree in occupational safety and health, environmental

10

science, industrial hygiene or a related field; experience with Form R and Tier 2 reporting; and 5-7 years of experience managing safety, health, and environment activities. Ex. J. Plaintiff admitted in his deposition that he lacked these qualifications. Pl.'s Dep. 58:11–60:7. Plaintiff also admitted that he did not have any evidence that the candidate chosen for the position was not qualified or less qualified than he was. Pl.'s Dep. 62:2–63:9. In fact, both her résumé and an affidavit submitted by the manager who hired her indicate that she did have all of the qualifications listed on the job posting, including a B.S. in Environmental and Hazardous Materials Management, more than 7 years of experience managing safety, health, and environment activities in an industrial setting, and experience with Form R and Tier 2 reporting. Ex. L; Ex. 4, Evertson Aff., at 3.

## IV. CONCLUSION

In sum, for each position that was not time-barred, Flowserve has offered evidence, in the form of job postings, that shows what qualifications and skills it expected successful applicants to have. Regardless of whether these qualifications and skills were "required" or simply "a plus," Plaintiff has offered no evidence that Flowserve did not prefer candidates who possessed such qualifications. Through affidavits, résumés, and Plaintiff's own deposition testimony, Flowserve has offered undisputed evidence that each of the individuals ultimately chosen for the positions at issue possessed qualifications or skills that Plaintiff did not. Plaintiff admitted that each successful applicant was qualified and that he could offer no evidence to show that he was more qualified. Put simply, Plaintiff cannot show that he was rejected from any of these positions under circumstances that give rise to an inference of unlawful discrimination; Plaintiff

has not offered any evidence that suggests that Flowserve made its hiring and promotion decisions for any other reason than the qualifications of the applicants.[10]

Because the undisputed material facts would not support a finding of intentional race discrimination, I will grant summary judgment in favor of Flowserve. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to Plaintiff and all counsel of record.

Entered this 21st day of May, 2013.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[10] Although Plaintiff makes no mention of it in his complaint or in his response to Flowserve's motion, he did state in his deposition that he had heard negative comments related to race from "several people" at Flowserve. In particular, he stated that some of his coworkers, who were not supervisors or managers and were not involved in the decision-making process regarding the open job positions, stated that they believed Plaintiff was being passed over because of his race. However, not only are these statements hearsay, there is no evidence that the individuals who made the statements had any basis for them or that they were anything other than mere speculation.

12